[Cite as *State v. Sailor*, 2014-Ohio-1062.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100009**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RU-EL SAILOR

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-03-435700-B

**BEFORE:** E.T. Gallagher, J., Boyle, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 20, 2014

**ATTORNEY FOR APPELLANT**

Paul A. Mancino
Mancino, Mancino & Mancino
75 Public Square Building, Suite 1016
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Daniel T. Van
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Ru-el Sailor ("Sailor"), appeals the denial of his motion for leave to file a motion for a new trial, or in the alternative, petition for postconviction relief. We find no merit to the appeal and affirm.

{¶2} In July 2003, Sailor was charged, along with codefendants Cordell Hubbard ("Cordell") and Nichole Hubbard ("Nichole"), with aggravated murder, murder, firearm specifications, kidnapping, felonious assault, and other related charges. According to the evidence adduced at trial, Sailor shot the victim, Omar Clark ("Clark"), and his companion, Clark Lamar ("Lamar"), during an argument in the early morning hours of November 17, 2002.

{¶3} Prior to the shooting, Clark, Lamar, and Nichole were playing cards with Maria Whitlow and Ellen Taylor ("Taylor"), at Taylor's house. Clark, Lamar, and Nichole left Taylor's house to purchase and smoke a "wet"[1] cigarette, which Clark purchased with $20 he borrowed from Nichole. Clark, Lamar, and Nichole shared the wet cigarette. When Nichole later dropped Clark off at home, she asked for repayment of the $20. When Clark told her he was only going to repay her $10 because she smoked some of the cigarette, she "flipped out." According to Lamar, Nichole became hysterical and threatened to call her brother because "y'all got me f—d up." Nichole telephoned someone and informed the person on the line that Clark and Lamar were "trying to play

_____

[1] A cigarette dipped in a solution containing PCP.

her * * * and * * * [get] her f—d up." She also informed the person that she was on Englewood Road in Cleveland before leaving the scene.

{¶4} Three to four minutes later, Cordell and Sailor arrived at Englewood Road and argued with Clark over the $20. Cordell asked Clark, "what the f—k you say to my sister." Cordell made a phone call and asked the person on the line, "Nichole, what he got on? A blue Nautica jacket?" While Cordell was arguing with Clark, Lamar observed that Sailor had a handgun and started running away. Behind him Lamar heard numerous shots fired and felt a bullet graze his right buttock.

{¶5} Taylor testified that she telephoned Nichole sometime after Nichole left her house, and Nichole responded: "I am going to call you back these N—s got to be f—d up. These N—s got to be f—d up." Nichole told her she was going to call her brother, and a moment later, she told Taylor that her brother was on the other line. Taylor was concerned for Nichole and repeatedly tried to call her, but Nichole kept hanging up on her.

{¶6} Three residents of Englewood Road witnessed the events. Tenitta Johnson ("Johnson") called police after observing the argument. She testified that she had a good look at the men and identified Cordell as one of them. Joseph Mayhand ("Mayhand") heard one of the men say to Clark, "I'm gonna call my sister and if she says this is you, then your ass is out." Mayhand also observed another man with a gun. Brandon Gibbs ("Gibbs"), who was on Englewood at the time of the shooting, saw Clark and Lamar arguing with two men he did not know. He overheard one of them say to Clark, "You

can't talk to my sister like that" and "My sister said you did. I'm about to call her right now. If she says you did it, you outta here." Larry Braxton ("Braxton"), who was with Gibbs, and lives on Englewood, began walking toward the group but turned around when he noticed that one of the men had a gun. Braxton identified Sailor as the person with the gun.

{¶7} Sailor testified in his own behalf and stated that he was with Cordell at the Benjamin Bar on the evening of the shooting until around 12:40 a.m. According to Sailor, they left the Benjamin Bar and went directly to another bar called 4U2B where they stayed until 2:00 a.m. before going to a party at St. Aloysius.

{¶8} The jury found Sailor guilty on all counts, except having a weapon while under disability. The court sentenced Sailor to 28 years to life. At the sentencing hearing, Cordell, who had not testified at trial, told the court that he was with a man named Will on the night of the shooting and that Sailor was not present.

{¶9} Sailor filed a motion for a new trial based on newly discovered evidence, approximately six weeks after sentencing. At a hearing on the motion, Cordell testified that he shot Clark in self-defense and that Sailor had nothing to do with it. Cordell stated that another person, William Sizemore ("Sizemore"), was with him the night of the shooting. The trial court denied the motion for a new trial. In a direct appeal, Sailor argued, inter alia, that he was denied due process of law when the court denied his motion for a new trial where Cordell established his actual innocence. This court affirmed the

trial court's judgment denying the motion for new trial. *State v. Ru-El Sailor*, 8th Dist. Cuyahoga No. 83552, 2004-Ohio-5207, ¶ 41-47.

{¶10} On April 12, 2013, Sailor filed a motion for leave to file a motion for new trial, or in the alternative, petition for postconviction relief. Sailor attached an affidavit from Clark's brother, Umar Clark ("Umar"), in which he states:

1. I received a phone call from William Sizemore after Cordell Hubbard and Ru-El Sailor were convicted of murdering my brother. He said he had to meet with me. He said he wanted to bring closure to this matter;

2. I met with him a couple days later. He told me that he wanted to let me know what my brother's last words were. He explained that "he tried like hell to stop this." Sizemore told me everything that occurred that evening. Sizemore was a few feet away from my brother when he was killed;

3. The name Ru-El Sailor never came up;

4. Sizemore advised me that he asked Cordell why he shot Omar. He reported that Hubbard just had a blank look on his face;

5. I never shared this information with any of Mr. Sailor's attorneys.

Further, affiant sayeth naught.

The trial court denied Sailor's motion for leave to file a motion for a new trial, or in the alternative, petition for postconviction relief without a hearing. Sailor now appeals and raises two assignments of error.

{¶11} In the first assignment of error, Sailor argues he was denied due process of law when the court overruled his motion for leave to file a motion for a new trial without a hearing. In the second assignment of error, Sailor argues he was denied due process of

law when the court overruled his motion for a new trial. We discuss these assigned errors together because they are interrelated.

{¶12} Pursuant to R.C. 2953.23(A), a court may not entertain an untimely petition for postconviction relief unless defendant initially demonstrates either (1) he was unavoidably prevented from discovering facts necessary for the claim for relief, or (2) the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in defendant's situation. R.C. 2953.23(A)(1)(a).

{¶13} With respect to motions for a new trial, Crim.R. 33(B) similarly provides that motions for a new trial on account of newly discovered evidence shall be filed within 120 days after the day upon which the verdict was rendered or from the trial court's decision. If a defendant seeks a new trial after the 120-day time period, he must first obtain leave from the trial court by demonstrating by clear and convincing evidence that he was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B). *State v. Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387, ¶ 10.

{¶14} To obtain a new trial based on "newly discovered evidence" after the 120-day time limit has passed, the defendant must establish that the newly discovered evidence: (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not

merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

{¶15} The Ohio Supreme Court has held that a trial court may, in the exercise of its sound discretion, weigh the credibility of affidavits submitted in support of a motion for a new trial based upon newly discovered evidence. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). In assessing the credibility of affidavits, the trial court should consider all relevant factors, including, but not limited to:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*Id*. at 285. The trial court may also "find sworn testimony in an affidavit to be contradicted by evidence in the record * * *, or to be internally inconsistent, thereby weakening the credibility of that testimony." *Id.*

{¶16} Crim.R. 33 does not require a hearing on the motion. *State v. Williams*, 8th Dist. Cuyahoga No. 99136, 2013-Ohio-1905, ¶ 18. To warrant a hearing, the newly discovered evidence must present a strong possibility that a new trial might reach a different result. *Id*. at ¶ 13. We will not disturb the trial court's decision to deny a motion for new trial based on newly discovered evidence absent an abuse of discretion. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 85.

{¶17} The affidavit offered in support of Sailor's motion is practically devoid of any detail. Moreover, the sworn testimony is contradicted by the testimony of eyewitnesses who observed not only that Sailor was with Cordell, but that Sailor was holding the gun at the time of the shooting. As previously stated, Lamar ran from the scene when he noticed Sailor was holding a handgun. Braxton, a disinterested witness, also testified that he saw Sailor holding a gun. Thus, the newly discovered evidence merely contradicts competent credible evidence adduced at trial and is insufficient to warrant a new trial. *Petro,* 148 Ohio St. 505, 76 N.E.2d 370, at syllabus.

{¶18} Moreover, the idea that Sizemore was present at the scene in lieu of Sailor cannot be considered "newly discovered" because Cordell testified at the hearing on the first motion for new trial that Sizemore was present at the shooting, instead of Sailor. Therefore, we cannot say that the trial court abused its discretion when it determined that Sailor's "newly discovered evidence" failed to disclose a strong probability that it would change the result if a new trial were granted.

{¶19} The first and second assignments of error are overruled.

{¶20} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated. Case remanded to the common pleas court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
SEAN C. GALLAGHER, J., CONCUR