[Cite as *State v. Bostick*, 2023-Ohio-3631.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                    No. 112437

    v. :

HOLLIS BOSTICK, :

    Defendant-Appellant. :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 5, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-02-424063-ZA

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney,
and Tasha L. Forchione, Assistant Prosecuting Attorney,
*for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, Erika
B. Cunliffe, Noelle Powell, and John T. Martin, Assistant
Public Defenders, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Hollis Bostick appeals from the trial court's February 14, 2023 judgment denying his motion for a new trial. After a thorough review of the facts and pertinent law, we affirm.

## Procedural History

{¶ 2} In 2003, Bostick was convicted by a jury of the felonious assault and attempted murder of Tommy Griffin. The jury also convicted Bostick of having weapons while under disability. The trial court sentenced Bostick to an almost 20-year prison term. This court affirmed the convictions in Bostick's direct appeal and denied his request for reopening of the appeal. *State v. Bostick*, 8th Dist. Cuyahoga No. 82933, 2004-Ohio-1902; *State v. Bostick*, 8th Dist. Cuyahoga No. 82933, 2005-Ohio-4003.[1] The Supreme Court of Ohio denied jurisdiction over his appeal. *State v. Bostick*, 107 Ohio St.3d 1411, 2005-Ohio-5859, 836 N.E.2d 1230.

{¶ 3} In the years following his conviction, Bostick, pro se, filed numerous motions in the trial court, including motions for judicial release, for merger of allied offenses, and to correct illegal sentence. These motions were denied.

{¶ 4} On September 29, 2021, counsel for Bostick filed a motion for leave to file a delayed motion for a new trial. On October 5, without having received a response from the state, the trial court granted Bostick's motion for leave, and on

---

[1] In the direct appeal, this court remanded the case to the trial court for the sole purpose of stating on the record the reasons for the consecutive-sentence findings the trial court made relative to Bostick's conduct in this case. *Bostick*, 8th Dist. Cuyahoga No. 82933, 2004-Ohio-1902, at *8.

October 14, Bostick filed his motion for a new trial. The state opposed the motion for a new trial.

{¶ 5} In its opposition, the state explained its reason for its lack of opposition to Bostick's motion for leave to file a delayed motion for a new trial. On September 15, 2021, the server room at the Cuyahoga County Prosecutor's Office flooded due to a water line break in a back-up air conditioner used to prevent the room from overheating. The flooding rendered the office's case management system and other electronic services inaccessible. Limited access to the case management system was restored on September 21, 2021; office users were able to access file notes, but documents within files were not accessible. Recovery of documents began occurring on September 29, 2021, but because of the overwhelming volume of data, the recovery was not complete. Thus, the office was unable "to receive, upload, and/or assign" Bostick's motion for leave and, accordingly, the state did not file a response. However, in its opposition to Bostick's motion for a new trial, the state offered substantive grounds to support its contention that Bostick was not entitled to his requested relief.

{¶ 6} In February 2023, the trial court summarily denied Bostick's motion for a new trial without a hearing. Bostick presents the following assignment of error for our review:

I. The trial court violated Hollis Bostick's state and federal constitutional rights when it summarily denied his motion for a new trial without a hearing and did so after granting him leave to file it.

**Factual Background**

{¶ 7} According to the parties' briefings at the trial-court level, the evidence at trial established that the victim, Tommy Griffin, was shot at close range outside an establishment in Cleveland. Bostick did not testify at trial, but his defense was that another individual on the scene at the time, Lonnie "Bud" McCann, was the shooter. Testimony from a Cleveland police detective established that Griffin was affiliated with a group known as the "Redell Boys" and Bostick and Bud were affiliated with a group known as the "Crumb/Ansel Boys." Griffin testified that he and Bostick and their respective acquaintances had been involved in prior altercations, including a robbery and three shootings, and he and Bostick previously had a physical fight.

{¶ 8} Griffin testified that he had been inside the establishment and as he was walking out, he saw Bud and Bostick. He heard Bostick say, "there go one of them mother f*****g n*****s right here." Griffin testified that Bostick was wearing a sling and he saw Bostick had a gun in the sling. Griffin started running and Bostick chased him. According to Griffin, he fell while he was running and while he was down on the ground, Bostick shot him. He described looking at Bostick "eye to eye." After being shot, Griffin was able to make it back to the establishment where he encountered Bud, who punched him in the jaw.

{¶ 9} Several eyewitnesses who testified for the state also identified Bostick as the shooter. One witness testified that she saw Bostick moments before the shooting occurred; he was wearing a sling and had a gun in it. Another witness

testified that Bostick chased the victim down an alley where the shooting eventually took place. Several eyewitnesses testified as to seeing Bostick standing over the victim while he was being shot.

{¶ 10} Bud testified and admitted being at the subject establishment on the evening in question. He was driving a 1988 white Cadillac at the time. He was outside the establishment with several other people, including Bostick. According to Bud, Griffin (the victim) came out of the establishment and looked scared or surprised. He heard Bostick say, "[T]hat's that n****r." Griffin ran and Bostick chased him. Bud then heard gunfire; he identified Bostick as the shooter. Bostick fled the scene in a blue Beretta or Corsica. Bud left the area in his Cadillac. Bud denied punching Griffin. Later that morning, Bud, Bostick, and others were socializing at a different venue. Bud asked Bostick about the shooting, and Bostick told him he (Bostick) shot Griffin.

{¶ 11} Bud was questioned on cross-examination about being a suspect in the investigation. Bud testified that he was stopped by the police and taken into custody after leaving the second venue; the police told him he was being stopped because his car fit the description of a vehicle driven by the individual involved in the shooting. No weapons were found on his person or in his vehicle. Bud was released and later brought back for further questioning. Both the state and Bostick agreed that defense counsel reviewed Bud's statement to the police and stated on the record that there were not any material inconsistencies with the statement and Bud's trial testimony.

{¶ 12} As part of the investigation, one of the investigating detectives prepared a photo array of individuals, which included Bostick. Four eyewitnesses (which included Bud), as well as the victim, Griffin, identified Bostick as the shooter. The assistant prosecuting attorney asked the detective, "[B]ased on your investigation, all the evidence you gathered, was there any evidence to suggest at the end of this investigation that [Bud] was the shooter?" The detective responded, "No." The assistant prosecuting attorney followed up, questioning the detective, "[W]as there any evidence after you wrapped this all up that Bud was the shooter?" Again, the detective responded, "[N]o, there was not." Another investigating detective testified that the shooter hit the victim two out of five times, which was consistent with the shooter being partially disabled. According to the detective, if the shooter "had a good hand, he probably would have killed" Griffin.

**Newly Discovered Evidence**

{¶ 13} In 2018, with the help of the Innocence Project, Bostick obtained a previously undisclosed police report from shortly after the shooting on the night it occurred. In the report, Griffin, the victim, told the police that an individual he knew as Bud shot him and left the scene in a white Cadillac with a burgundy top. Griffin further told the police that Bud was a nickname, he did not know his real name, but he knew the general area where he lived. The report indicates that the police followed up on Griffin's tip and located Bud driving the white Cadillac and arrested him, as was testified to by Bud. Griffin's account contained in that report was

obtained while he was at the hospital receiving treatment, shortly after he had been shot.

{¶ 14} In his motion for a new trial, Bostick contended that the fact that Bud had been accused of the crime was never disclosed to the defense. In an affidavit appended to the motion, Bostick's trial counsel averred that Bostick's entire defense centered on the notion that Bud, not Bostick, had shot Griffin. Counsel averred that had he possessed the information contained in the missing report he would have used it in support of Bostick's case and to counter the state's evidence. According to Bostick,

> there is more here than a simple failure to disclose exculpatory evidence. This appears to have been a cover up. One of the detectives assigned to the case testified that no one identified anyone other than Bostick as the shooter. That is false. The state compounded that falsehood by vigorously arguing the point in its summation to the jury. Not only was defense deceived, but also the trial court and the jury.

**Law and Analysis**

{¶ 15} The grant or denial of a motion for a new trial on the grounds of newly discovered evidence is within the discretion of the trial judge and this ruling will not be disturbed on appeal absent an abuse of discretion. *State v. Hill*, 64 Ohio St.3d 313, 333, 595 N.E.2d 884 (1992); *State v. Schiebel*, 55 Ohio St.3d 71, 76, 564 N.E.2d 54 (1990). An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way,

in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 16} New trials are governed by Crim.R. 33. Crim.R. 33(A)(6) provides that a motion for a new trial on the ground of newly discovered evidence may be granted only if that evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Cannon*, 8th Dist. Cuyahoga No. 103298, 2016-Ohio-3173, ¶ 12, citing *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

{¶ 17} Under Crim.R. 33(B), new trial motions that are based upon newly discovered evidence must be filed within 120 days after the verdict was rendered, unless it appears, by clear and convincing proof, that the movant was unavoidably prevented from discovering the new evidence. A defendant is "unavoidably prevented" from filing a timely motion for new trial if the defendant had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence. *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).

{¶ 18} Crim.R. 33 does not require a hearing on a motion for a new trial. *State v. Conner*, 8th Dist. Cuyahoga No. 103092, 2016-Ohio-301, ¶ 23. "To warrant

a hearing, the newly discovered evidence must present a strong possibility that a new trial might reach a different result." *State v. Sailor*, 8th Dist. Cuyahoga No. 100009, 2014-Ohio-1062, ¶ 16, citing *State v. Williams*, 8th Dist. Cuyahoga No. 99136, 2013-Ohio-1905, ¶ 13. The decision to conduct a hearing lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Conner* at *id.*, citing *State v. Smith*, 30 Ohio App.3d 138, 139, 506 N.E.2d 1205 (9th Dist.1986).

{¶ 19} According to Bostick, "[g]iven the underlying grounds for the new trial request and the case's posture," the trial court's ruling denying his motion for a new trial "was simply not rational, constitutes an abuse of discretion, and should be reversed." Alternatively, Bostick requests that we remand the case to the trial court for an evidentiary hearing so that the trial court can determine whether he is entitled to a new trial based on new evidence that (1) supports his claim that he did not commit the misconduct charged; (2) demonstrates that the prosecution failed to fulfill its obligation to disclose to the defense exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) gives rise to a bona fide concern that his conviction was secured with perjured testimony.

{¶ 20} Upon review, Bostick's contentions that the trial court abused its discretion by denying his motion for a new trial, and doing so without a hearing, are not well taken. In regard to his contention that the newly discovered police report supports his contention that he was not the shooter, the overwhelming evidence

refutes that. We cite what this court stated in addressing Bostick's manifest weight claim on direct appeal:

> After a careful inspection of the record, we find no evidence that the jury lost its way in this case. One witness testified that she saw the appellant with a gun moments before the shooting occurred. Another told the jury that the appellant chased the victim down the alley where the shooting eventually took place. Several eyewitnesses testified as to seeing the appellant standing over the victim while he was being shot. Evidence was introduced regarding the appellant's flight from the scene and attempts to evade police. The victim positively identified the appellant as his assailant. In light of all this evidence, we cannot say that the jury lost its way here.

*Bostick*, 8th Dist. Cuyahoga No. 82933, 2004-Ohio-1902, at *12.

{¶ 21} That sentiment was repeated in this court's opinion denying Bostick's request for reopening of his direct appeal:

> The evidence against him was overwhelming. The victim testified that he saw Bostick pull out a revolver and then he was shot while running away. Another witness testified that he had known Bostick for ten years and that he saw Bostick chase the victim and shoot him. Still another witness saw Bostick talking with the first witness, then she heard shots and saw Bostick run to his car and drive away. As already stated, the first witness saw Bostick with a gun and saw him shoot the victim. The defense rested immediately after the State rested its case and offered no defense testimony.

*Bostick*, 8th District Cuyahoga No. 82933, 2005-Ohio-4003, at ¶ 10.

{¶ 22} The subject police report does not disclose a strong probability that a different result would have been reached had the jury known about it. Griffin, the victim, testified at trial that it was Bostick who shot him, and his testimony was corroborated by the testimonies of the other witnesses.

{¶ 23} We are also not persuaded by Bostick's contention that he was entitled to a new trial or a hearing on his motion for same based on a violation under *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. According to *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Notably, this doctrine has been extended such that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). In addition, this doctrine applies whether there has been a specific request, a general request, or no request by the defendant for exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

{¶ 24} A *Brady* violation only occurs when the prosecutor suppresses *material* evidence. Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *State v. Johnston*, 39 Ohio St.3d 48, 61, 529 N.E.2d 898 (1988), quoting *Bagley* at *id.*

{¶ 25} The newly discovered police report, viewed in the context of the whole case, is not sufficient to undermine confidence in the verdict. *See State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 36. The narrative Bostick

cites was taken while Griffin was at the hospital, shortly after the shooting, receiving treatment. Bostick attached two pages of the report — pages three and four — to his motion for a new trial. The state contends, and Bostick has not disputed or shown the contention to be false, that the report consists of six pages and identifies Bostick as the "primary suspect" on page one and states "[T]he victim identified Mr. Hollis Bostick as the shooter" on page five.

{¶ 26} Further, in the other police reports contained in the record Griffin clearly identified Bostick as his shooter: (1) Mar. 25, 2002 report — "Q. Do you know the male that shot you? A. Just by the name Hollis * * * "; (2) Mar. 28, 2002 report — "The victim stated that he was shot by * * * 'Hollis.'" Additionally, the other eyewitnesses all identified Bostick as the shooter.

{¶ 27} Moreover, we are not persuaded by Bostick's contention that his conviction was obtained with perjured testimony. According to Bostick, one of the investigating detective's testimony that there was no evidence that Bud was the shooter was false. The specific questioning at trial was as follows:

> Q. Again, defense counsel asked you why you didn't get a search warrant to get Bud's clothes to see if there was any residue. Was there any evidence *after you wrapped this all up* that Bud was the shooter?
>
> A. No, there was not.

(Emphasis added.)

{¶ 28} That testimony was not false. *After the investigation*, the evidence did not support a theory that Bud was the shooter. The evidence included Bud being stopped on the night of the shooting and no weapon being recovered from his person

or vehicle, several eyewitnesses identifying Bostick as the shooter, Griffin informing the police on more than one occasion that Bostick shot him, as well as Griffin identifying Bostick as the shooter from a photo array.

{¶ 29} Finally, we find Bostick's insinuation that the trial court abused its discretion by granting him leave to file a motion for a new trial, then denying the motion without a hearing, to be without merit. As mentioned in the procedural history, the state did not oppose the motion for leave to file a motion for new trial because of, as it stated in its opposition to the motion for new trial, circumstances beyond its control. Thus, at the time the trial court granted Bostick leave, it was doing so without the state's position on the matter. Once it had the state's position — as set forth in the state's brief in opposition to the motion for a new trial — it was within the trial court's discretion to deny the motion without a hearing. Our review does not demonstrate that the trial court abused that discretion.

{¶ 30} Bostick's sole assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

SEAN C. GALLAGHER, J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS (WITH SEPARATE OPINION)

MARY EILEEN KILBANE, P.J., DISSENTING:

{¶ 32} I respectfully dissent from the majority opinion. I would remand the case to the trial court for a hearing on Bostick's motion for a new trial.

{¶ 33} At the original trial, Bostick's defense rested on his argument that Bud, not Bostick, shot Griffin. The state presented the testimony of Bud, Griffin, and several eyewitnesses that Bostick was the shooter. Bud also testified that he was at the location where the shooting occurred, and he left the area driving a distinctive 1987 white Cadillac. One of the police officers testified that his investigation did not indicate Bud was the shooter. Bostick did not testify at trial.

{¶ 34} Years later, Bostick hired a private investigator who discovered a Cleveland Police Department incident report ("incident report") that was compiled by the Cleveland police officers first on the scene following Griffin's shooting. The incident report was never disclosed to Bostick prior to or during trial. The incident report reflected Griffin's immediate recall of the shooting including that Bud shot him and drove away in a white 1987 Cadillac with a burgundy top:

> [Griffin] stated he tried to run and slipped and the offender fired several shots at him. [Griffin] stated he saw the offender run into a white Cadillac w/a burgundy top, 1987 4 door model and drive away w/one other black male inside of it. [Griffin] stated he then went into the Golden House Bar to have someone call CPD. [Griffin] further stated to us that he knows the offender goes by a nickname as "Bud" and he does not know his real name. He also believes the offender stays by E. 79th & Crumb area in the 5th District.

Cleveland Police Department incident report, April 17, 2002. The incident report contradicted the trial testimony of Griffin and Bud and arguably the police officer. The incident report called into question the state's argument that nobody informed the police that Bud was the shooter.

{¶ 35} Because Bostick's defense centered on the argument that Bud was the shooter — not Bostick — the undisclosed incident report was critical to his defense. This position is supported by Bostick's trial counsel's sworn testimony that is attached to Bostick's motion for a new trial and states in pertinent part:

> 4. The shooting occurred in March of 2002 and Bostick was arrested several months afterward. After I was assigned, I conferred with Mr. Bostick, who maintained that he did not do the shooting.

> 5. I received and reviewed the discovery material that prosecutors provided. At the time, written memoranda of witness statements, including those of the complainant were not provided to counsel. Instead, prosecutors would read police reports containing such statements to defense counsel, who would memorialize them the best they could.

> 6. Going into trial, the discovery that I had indicated that the complainant and another witness had identified Mr. Bostick as the shooter. Other witnesses were less certain, though they still seemed to believe Mr. Bostick was the shooter. But the incident happened late at night, the witnesses had consumed alcohol, and, with that lack of certainty, I believed there was good reason to doubt Mr. Bostick's

identification as the perpetrator. That is the defense that I used on Mr. Bostick's behalf at trial.

7. If I had known that immediately after the shooting, the complainant identified another man, known as "Bud", as the shooter, that information would have supported our defense and I would have presented it to the jury. As my closing argument makes clear, I tried the case on the defense theory that "Bud" was the shooter.

8. If I had known that the complainant told police immediately after the shooting that this man he called "Bud" got into a white Cadillac with a burgundy top, the description of which matched that of the vehicle that Lonnie McCann (who admitted that he goes by the name of "Bud") was arrested in later that night, I most certainly would have presented it to the jury. Mr. McCann was an important prosecution witness who testified at trial that Mr. Bostick was the shooter. That fact that minutes after the shooting, the complainant identified him would have helped our defense and undercut McCann's credibility as a prosecution witness.

9. I was never made aware of a report reflecting that the complainant identified someone other than Mr. Bostick as his shooter — or that that same person became a primary prosecution witness at trial. In fact, at trial, the prosecution maintained that no one associated with this case identified anyone other than Mr. Bostick as the shooter. This information was material in this case and I would have done everything in my capacity to make the jury aware of it.

Bostick's motion for new trial pursuant to Crim.R. 33(A), ex. B, affidavit of John Luskin.

{¶ 36} During his trial testimony, Griffin testified that he was punched by Bud but shot by Bostick. But the incident report, which reflects Griffin's statements to the investigating police officers immediately after the shooting, identifies Bud as the shooter. The incident report appears to contain statements consistent with the defense's theory at trial — exculpatory evidence that was material to Bostick's

defense — and the failure to disclose that report could have amounted to a *Brady* violation.

{¶ 37} While a trial court is not required to conduct a hearing on a motion for a new trial, a hearing is appropriate when "the allegations in the motion demonstrate substantive grounds for relief." *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 28, citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999); *State v. Stewart*, 10th Dist. Franklin No. 22AP-531, 2023-Ohio-1150, ¶ 18 ("[T]he decision whether to conduct a hearing on a motion for new trial is left to the sound discretion of the trial court."). Considering that the incident report reflects Griffin's statements immediately after the shooting and the statements relate to the substantive issue of the shooter's identity, I would find that there was a strong possibility that a new trial might have reached a different result. Thus, I would find that the trial court abused its discretion when it did not hold a hearing on Bostick's motion for a new trial.

{¶ 38} For these reasons, I respectfully dissent.