[Cite as *State v. Kilgore*, 2025-Ohio-593.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

STATE OF OHIO

    Appellee

v.

ERIC F. KILGORE, II

    Appellant

C.A. No.     24CA012150

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     21CR103811

DECISION AND JOURNAL ENTRY

Dated: February 24, 2025

STEVENSON, Presiding Judge.

{¶1} Defendant-Appellant Eric F. Kilgore appeals from the judgment of the Lorain County Court of Common Pleas that denied his motion for a new trial based on newly discovered evidence. For the reasons set forth below, this Court affirms.

I.

{¶2} The background of this matter was set forth in our original appellate decision upholding Mr. Kilgore's convictions, *State v. Kilgore*, 2023-Ohio-1786 (9th Dist.) ("*Kilgore I*"). In *Kilgore I*, this Court summarized the pertinent facts and procedural history as follows:

> This appeal arises from an incident on September 13, 2020, where Mr. Kilgore, and co-defendant Iyaisha Palos-Grantham, robbed and assaulted the victim with a firearm at Ms. Palos-Grantham's residence. Mr. Kilgore was indicted on one count of aggravated robbery, in violation of R.C. 2911.01, a felony of the first degree, with one and three year firearm specifications; one count of kidnapping, in violation of R.C. 2905.01, a felony of the first degree, with one and three year firearm specifications; one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree, with one and three year firearm specifications; and one count of intimidation, in violation of R.C. 2921.04, a felony of the third degree, with one and three year firearm specifications. . . .

. . . A two-day bench trial commenced, and Mr. Kilgore was found guilty of aggravated robbery, felonious assault, and one-year/three-year firearm specifications on both counts. . . .

At sentencing, the trial court merged aggravated robbery and felonious assault, as well as the firearm specifications thereto, as allied offenses of similar import. The State elected that Mr. Kilgore be sentenced on aggravated robbery and its firearm specifications. Further, the trial court merged the one-year/three-year firearm specifications to aggravated robbery and elected to sentence Mr. Kilgore on the three-year firearm specification. Mr. Kilgore was sentenced to a mandatory three-year term of imprisonment on the firearm specification and to three years of community control sanctions with a reserved indefinite prison term of eleven years minimum to sixteen and a half years maximum on the aggravated robbery.

. . .

Here, even though the firearm was never recovered, the evidence provided by the State, if believed, sufficiently established Mr. Kilgore brandished and used a firearm in the commission of aggravated robbery and the firearm was operable. *At trial, the victim testified:*

[. . .]

*I seen somebody with a gun. That's when I first got pistol whipped. I went down. I was held at gunpoint.*

[. . .]

*Additionally, the victim testified Mr. Kilgore hit him with a black gun two or three times on the side of his face, temple area. The victim further testified he was laying on his stomach with his forehead on the carpet and Mr. Kilgore pressed the gun to the back of his head* while Ms. Palos-Grantham obtained the passwords for his cellphone and Chase banking mobile app. . . .

. . .

*Deputy Matt Schilke testified the victim had some swelling and a "knot" from his eye bone going toward his ear along his temple. The victim's injuries were photographed and Deputy Schilke testified the injuries are consistent with being struck in the head with a firearm.*

Upon viewing the evidence in a light most favorable to the State, we conclude a rational trier of fact could have found beyond a reasonable doubt Mr. Kilgore used and brandished a firearm in the commission of aggravated robbery and the firearm was operable.

(Emphasis added.) *Id*. at ¶ 2-4, 10-12.

{¶3} In October 2023, Mr. Kilgore, through counsel, moved for leave to file a motion for new trial and for a new trial pursuant to Crim.R. 33(A)(6). The motion for new trial was supported by the affidavit of the alleged victim, G.S., which asserted as follows:

> To whom it may concern I, [G.S.] was involved in an incident that involved Esha Palos and [Mr. Kilgore]. The incident resulted in Esha Palos [p]hysically taking my phone and transferring money from my account to hers. Originally I thought that during the time that Ms. Palos was transferring the money Mr. Kilgore had a firearm. After going over the situation in my mind the last two years I didn't actually see a firearm but assumed that there was a firearm present. I'm writing this statement of my own free will because I don't want anyone to receive a punishment for something that I can[']t with 100% certainty attest to.

{¶4} The trial court granted Mr. Kilgore's request for leave the same day. The State objected to both the motion for leave and the court's granting the motion for leave. The trial court overruled the State's objection to the issue of leave and set an evidentiary hearing on the motion for new trial, but Mr. Kilgore withdrew the motion. In May 2024, Mr. Kilgore again moved for leave to file a motion for a new trial and supported the motion with the same affidavit of G.S. The State objected. The trial court granted Mr. Kilgore's motion for leave, and he subsequently moved for a new trial and requested an evidentiary hearing. Once again, the State objected. The trial court denied the motion for new trial in a written judgment entry. The court did not hold a hearing.

{¶5} Mr. Kilgore timely appealed and raises two assignments of error for our review. For the reasons that follow, we affirm.

{¶6} We will address Mr. Kilgore's assignments of error out of order because our conclusion under the second assignment of error is determinative of our analysis under his first assignment of error.

II.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT [MR. KILGORE'S] PRO SE MOTION FOR A NEW TRIAL PURSUANT TO OHIO CRIMINAL RULE 33(A)(6)[.]**

**{¶7}** This Court has consistently held that an appellate court reviews a trial court's ruling on a motion for new trial under an abuse of discretion standard. *State v. Roper*, 2021-Ohio-188, ¶ 8 (9th Dist.), citing *State v. Pyle*, 2018-Ohio-3160, ¶ 47 (9th Dist.). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court." *Roper* at ¶ 8, citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1983).

**{¶8}** Crim.R. 33(A)(6) permits a defendant to move for a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." A motion for a new trial that alleges newly discovered evidence must be filed within 120 days of the verdict. Crim.R. 33(B).

**{¶9}** In *State v. Davis*, 2023-Ohio-1657 (9th Dist.) this Court addressed the requisites for granting a new trial based upon newly discovered evidence as set forth in *State v. Petro*, 148 Ohio St. 505 (1947) and *State v. Brown*, 2010-Ohio-405 (7th Dist.):

> To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

. . .

In determining whether recanted testimony qualifies as newly discovered evidence, this Court has consistently applied the well-settled test set forth in *Brown* at ¶ 20, which provides:

> If the newly discovered evidence is a recantation by a main prosecution witness, the trial court must determine which of the contradicting testimonies of the recanting witness is credible. The trial court must make two determinations: (1) which of the contradictory testimony offered by the recanting witness is credible and true, and if the recanted testimony is to be believed; (2) would the evidence materially affect the outcome of the trial.

*Davis* at ¶ 32, 34.

{¶10} "A trial court may grant a motion for new trial on the grounds that a witness has recanted [his] testimony when the trial court determines that the statements of the recanting witness are credible and true." *State v. Covender*, 2008-Ohio-1453, ¶ 11 (9th Dist.). As we have previously stated:

> Because it is the trial court's obligation to measure the credibility of witnesses, in order to grant a motion for new trial based on recanted testimony, the trial court must be reasonably well satisfied that the trial testimony initially given by the witness was false (and, by implication, that the recanted testimony is credible and true). When a trial court does not make this determination regarding the credibility of recanted testimony, it is improper for a trial court to grant a new trial.

(Internal quotations and citations omitted.). *State v. Velez*, 2010-Ohio-312, ¶ 22 (9th Dist.).

{¶11} In making that credibility determination, the trial court must bear in mind the fundamental principle that "[n]ewly discovered evidence that recants testimony given at trial is 'looked upon with the utmost suspicion.'" *Covender* at ¶ 11, quoting *State v. Elkins*, 2003-Ohio-4522, ¶ 15 (9th Dist.). Merely because an important witness recants, the defendant is not per se entitled to a new trial as a matter of law. *Id*. at ¶ 12. "Recanting affidavits and witnesses are viewed with extreme suspicion because the witness, by making contradictory statements, either lied at trial, or in the current testimony, or both times." *State v. Gray*, 2010-Ohio-11, ¶ 29 (8th Dist.).

{¶12} Mr. Kilgore argues that the trial court abused its discretion in denying his motion for new trial because G.S. was the State's primary witness for the prosecution and has now executed an affidavit recanting his testimony that a gun was present during the commission of the offenses; therefore, the newly discovered evidence would change the outcome of a new trial if one was granted. In support, Mr. Kilgore points out that at trial, G.S.'s testimony was that he saw someone with a gun, got pistol whipped, was held at gunpoint, and was hit on the side of his face and temple with a black gun two or three times. This evidence contradicted the defense testimony of Mr. Kilgore, his co-defendant Ms. Palos, and another eyewitness, A.C., who all said that a gun was not present during the altercation. Mr. Kilgore asserts that because G.S.'s recanting testimony now aligns with the defense witnesses' testimony that a gun was not present, it does not merely impeach or contradict prior evidence, but if believed, would prove his innocence. Mr. Kilgore summarizes his argument as follows:

> Since the instant case is based entirely on the word of [G.S.] who stated [Mr. Kilgore] assaulted him with a gun, and now states he never actually saw a gun, if this fact was presented at trial there is a strong probability of a different outcome. It is clear that without a gun being present, the conviction and outcome would have been different.

{¶13} In denying Mr. Kilgore's motion for new trial, the trial court specifically reviewed the six *Petro* factors required for determining whether a new trial should be granted based upon newly discovered evidence. "The *Petro* test is in the conjunctive. Therefore, all six factors must be satisfied to justify granting a motion for new trial." *State v. Carter*, 2024-Ohio-5193, ¶ 31 (9th Dist.). As explained in detail below, the court ultimately concluded that Mr. Kilgore's newly discovered evidence did not disclose a strong probability that it would change the result of Mr. Kilgore's guilty verdict, that G.S.'s affidavit was not a direct recantation of his prior testimony,

and therefore, Mr. Kilgore did not meet all the prongs of the *Petro* test as was necessary for him to be granted a new trial.

{¶14} In addressing the first *Petro* factor, the trial court found that G.S.'s affidavit was not a direct recantation of his trial testimony as G.S. did not clearly attest that he lied at trial. Rather, in a more diluted manner, G.S. attested that he "assumed that there was a firearm present" and that he cannot attest "100%" that "there was a firearm present." The trial court also questioned how G.S. could have asserted that his memory got better years later and he could now see events differently. The trial court then compared G.S.'s affidavit to his trial testimony. The court found that his trial testimony was "unequivocal regarding the presence of a firearm," "leaves little room for doubt that. . . [G.S.] saw a black firearm wielded by [Mr. Kilgore]," and that this was "much more compelling evidence than an assertion two years later that. . . [G.S.] 'assumed' there was a firearm." Based on that comparison, the court concluded that it was "not satisfied at all that [G.S.'s] initial trial testimony was false" and that the "recanted statement in the Affidavit is credible and true."

{¶15} Regarding the sixth *Petro* factor, whether the evidence does not merely impeach or contradict the former evidence, the trial court found that G.S.'s affidavit recantation served to contradict his prior testimony because implicit in the affidavit is the assertion that he was not telling the truth at trial. While acknowledging that G.S.'s affidavit was not actually a clear recantation, the court did find that his testimony at trial and the affidavit were inherently contradictory. In so finding, the court noted specifically that at trial, G.S. testified that he saw a firearm, was struck by it, that it was black in color, and was wielded by Mr. Kilgore, however his affidavit attests that he did not actually see the firearm and just assumed it was present. The court thus concluded that G.S.'s affidavit would not have likely changed the result if a new trial was

granted because his clear testimony at trial was more probative and truthful. The court made particular note of the fact that "[c]ontrary to his Affidavit statement[]. . . there was no assumption, hunch, inference, supposition, suspicion, conjecture, or postulation at trial."

{¶16}   After its analysis of the *Petro* factors, the trial court discussed the significance of the fact that the case was originally tried to the court rather than to a jury, and "[a]s such, the judge ruling on [Mr. Kilgore's] motion for a new trial is the same judge that heard the evidence, including the testimony by [G.S.], weighed the credibility of the witnesses, and convicted [Mr. Kilgore] of the firearm specification."  In support, the court recited the holding in  *Dayton v. Martin*, 43 Ohio App.3d 87 (2d Dist. 1987) that "the trial judge, as the factfinder, is in the best possible position to determine whether his conclusion as to [the defendant's] guilt or innocence would be likely to be affected by the newly discovered evidence. . ." *Id*. at 90.

{¶17}   In reviewing the trial court's decision, it is clear that it considered all six *Petro* factors, which are the requirements for determining whether a motion for new trial based on newly discovered evidence should be granted.  The court engaged in a comprehensive and thorough analysis of the first and sixth factors, which ultimately was the basis for its conclusion that Mr. Kilgore did not meet his burden under *Petro*. The trial court followed our instruction in *Velez* that it determine whether the trial testimony was false and the recanted testimony is credible, noting the differences between G.S.'s testimony at trial and his recantation affidavit. *Id*. at ¶ 22. The trial court conducted a detailed analysis of whether G.S.'s affidavit evidence was merely contradictory to his trial testimony and would have made a difference in the outcome at trial.  In so doing, the court found that G.S.'s affidavit was not truly a recantation in the first instance. The trial court also found it significant that the same judge that heard the evidence at trial was now reviewing the

motion for new trial, and thus, was in the best possible position to assess whether G.S.'s affidavit would likely change Mr. Kilgore's guilty verdict.

{¶18} Based on the foregoing, we cannot conclude that the trial court abused its discretion in denying Mr. Kilgore's motion for a new trial based on newly discovered evidence. The court supported its conclusion with citations to applicable case law and portions of the trial transcript and G.S.'s affidavit that were influential in its analysis. Mr. Kilgore has failed to identify how the affidavit of G.S. does not merely contradict his trial testimony and would change the outcome if a new trial were granted. We agree with the trial court that G.S.'s affidavit is not a clear recantation because it does not attest that he lied during the trial or that he did not actually see a gun. Furthermore, the affidavit does not offer any explanation as to why G.S. told the police he saw a black gun, got pistol-whipped, and how he was so certain then but not now. The affidavit also does not explain G.S.'s injuries, which according to the testimony of the police officer, were consistent with being struck in the head with a gun.

{¶19} Mr. Kilgore's second assignment of error is overruled.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT HOLD AN EVIDENTIARY HEARING ON [MR. KILGORE'S] PRO SE MOTION FOR A NEW TRIAL PURSUANT TO OHIO CRIM. RULE 33(A)(6).**

{¶20} Mr. Kilgore argues that the trial court abused its discretion by failing to hold an evidentiary hearing on his motion for new trial because a hearing was necessary to more accurately assess the credibility of G.S. in determining whether he was telling the truth at trial or in the affidavit recanting his testimony. He maintains that although the trial court found G.S.'s trial testimony was more credible than his affidavit, it is too difficult to compare written and live testimony without a hearing.

**{¶21}** "By its terms Crim.R. 33 does not require a hearing on a motion for a new trial, and this Court has consistently held that the decision to conduct a hearing is one that is entrusted to the discretion of the trial court." *State v. Jalowiec*, 2015-Ohio-5042, ¶ 20 (9th Dist.). "Likewise, a trial court's ultimate decision to grant or deny a motion for new trial is one this Court reviews for an abuse of discretion." *State v. McQuistan*, 2018-Ohio-539, ¶ 42 (9th Dist.). "To warrant a hearing, the newly discovered evidence must present a strong possibility that a new trial might reach a different result." *State v. Sailor*, 2014-Ohio-1062, ¶ 16 (8th Dist.); *see e.g., State v. Smith*, 30 Ohio App.3d 138, 140 (9th Dist. 1986) (no abuse of discretion by trial court in deciding the motion for new trial on grounds of newly discovered evidence without a hearing where it is probable the result of a new trial would not be different).

**{¶22}** Here, the trial court did not issue a written decision explaining why it did not hold a hearing. However, the court denied Mr. Kilgore's motion for a new trial because it determined that the newly discovered evidence, G.S.'s recanted testimony, would not have changed the outcome of the trial. We decided under Mr. Kilgore's second assignment of error that the trial court did not abuse its discretion in denying the motion on this basis. Therefore, because the standard for determining whether a hearing should be conducted is the same; that is, whether a new trial might reach a different result, we likewise conclude that the trial court did not abuse its discretion by not holding a hearing on Mr. Kilgore's motion for new trial. Mr. Kilgore's first assignment of error is overruled.

## III.

**{¶23}** Based on the foregoing, Mr. Kilgore's assignments of error are without merit and overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

—

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.


APPEARANCES:

ERIC F. KILGORE, II, pro se, Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.