[Cite as *State v. Stuart*, 2025-Ohio-2420.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No.  L-24-1170 |
| Appellee | Trial Court No.  CR0202302033 |
| v. | |
| Randy Stuart | **DECISION AND JUDGMENT** |
| Appellant | Decided:  July 8, 2025 |

\* \* \* \* \*

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani and William H. Dailey, Assistant
Prosecuting Attorneys, for appellee.

Karin L. Coble, for appellant.

\* \* \* \* \*

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellant, Randy Stuart, appeals from the July 3, 2024 judgment of the Lucas County Court of Common Pleas convicting him of two drug trafficking offenses. For the following reasons, we affirm, in part, and reverse, in part, the trial court's judgment.

## A. Facts and Procedural Background

**{¶ 2}** This appeal arises from an incident that occurred on Mach 9, 2023. On that date, appellant was traveling in Lucas County, Ohio, in a rented vehicle when a Toledo Police officer initiated a traffic stop due to the illegal tinting on the vehicle's windshield. During the stop, the officer suspected appellant had drugs in the vehicle and called for a K-9 unit. When the K-9 officer arrived, the officers spoke with appellant regarding the planned search of the exterior of the vehicle. Appellant consented to a search of the interior of the vehicle before the dog began its search. While conducting the search, an officer discovered a magnetic box, attached to the underside of the vehicle, that contained cocaine and a fentanyl-related compound.[1] Appellant was then arrested. During the arrest, the officers discovered that appellant possessed three cellular phones and $1,380 in cash.

**{¶ 3}** On July 11, 2023, appellant was indicted on one count of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2) and (C)(9)(e), a second-degree felony; one count of possession of a fentanyl-related compound in violation of R.C. 2925.11(A)(c)(11) and (C)(11)(d), a second-degree felony; one count of trafficking in cocaine in violation of R.C. 29253.03(A)(2) and (C)(4)(a), a fifth-degree felony; and one count of possession of cocaine in violation of R.C. 2925.11(A)(c)(4)(a), a fifth-

---

[1] At trial, appellant stipulated to the identification of the drugs and their weight.

degree felony. Appellant was arraigned on July 27, 2023, and entered a not guilty plea to all four counts.

{¶ 4} Following several continuances, appellant proceeded to a two-day trial beginning on June 18, 2024. At trial, the parties elicited the following testimony:[2]

### Testimony of Sergeant Kenneth Krabill

{¶ 5} At the time of trial, Sergeant Kenneth Krabill had been employed with the Toledo Police Department in Toledo, Ohio, for 11 years. During that time, he served as both a patrol officer, primarily responding to 911 calls, and as a member of the Toledo SWAT Team executing high-risk warrants and arrests. He was assigned to the Department's gang task force at the time of appellant's arrest. The gang task force investigates gang-related crimes and criminal activity in specific neighborhoods throughout the city. He testified that he is familiar with the tactics utilized by drug dealers as part of his investigations, including their use of "a lot of cell phones, scales, a lot of money, [and] large amounts of currency, especially in various denominations or smaller denominations[.]" He also noted that individuals selling drugs typically were found with "a lot of product" that they conceal "in all different ways." Regarding the method of selling drugs, Sergeant Krabill testified that "[h]and-to-hand deals are common things that sometimes we'll see or quick coming and going from locations." Lastly, he described the efforts drug dealers used to conceal their "product," including hiding it in

---

[2] Testimony that is not relevant to this court's analysis of appellant's arguments is omitted.

3.

"natural voids inside the vehicles [and in] magnetic boxes that are becoming more popular where they're putting it under the car" as well as an increased use in rental vehicles in trafficking cases. Sergeant Krabill stated that he learned these tactics through training and "hundreds" of drug trafficking investigations.

{¶ 6} Sergeant Krabill then turned to the incident underlying the present appeal. He testified that he was on duty on March 9, 2023. He and Detective Robert Bascone were patrolling the "East side" of Toledo in a "limited marked vehicle"—that is, a vehicle equipped with lights and sirens but no exterior identifying markings to indicate that it is a police vehicle. As they approached an apartment complex, Sergeant Krabill saw a vehicle exit the complex and travel in the opposite direction. He noted that the vehicle's windshield was "completely black" and that he "couldn't see any light at all" through the windshield. Ohio law prohibits tinting a windshield beyond a six-inch strip at the top. Upon observing the violation, Sergeant Krabill turned his vehicle around to initiate a traffic stop. Upon regaining sight of the vehicle, he determined that the license plates were assigned to a "rental" vehicle.

{¶ 7} Upon approaching the vehicle, Sergeant Krabill identified appellant as the driver and noted that he was the vehicle's only occupant. Appellant informed Sergeant Krabill that the vehicle belonged to "his girl." Sergeant Krabill testified that prior to and during the stop he observed "indicators" that suggested the presence of drugs in the vehicle. These included appellant's "weaving" through the high crime area, the fact that it was a rental vehicle with an illegally tinted windshield, and appellant's statement that

4.

the car belonged to his girl when it was already known to be a rental vehicle. Based on these observations, Sergeant Krabill requested the assistance of a K-9 unit.

{¶ 8} When the K-9 unit arrived, the officer asked appellant to exit the vehicle. He informed appellant that he was going to have his dog search around the exterior of the vehicle. Appellant informed the officer that he had smoked marijuana in the vehicle earlier in the day and concluded that it would be likely the dog would alert the officer to the presence of drugs. In light of that conclusion, appellant consented to a search of the vehicle.

{¶ 9} While searching the vehicle, Sergeant Krabill noted that the interior was "pretty clean." He then noticed a black box underneath the driver's side door of the vehicle. Knowing that it was common for drug dealers to use magnetic boxes to hide contraband, Sergeant Krabill removed the box and searched it. He discovered a bag filled with 25 smaller plastic bags with some containing what he described as "clearly crack cocaine" and others containing a "powder" substance. He testified that he is able to identify crack cocaine based on certain physical characteristics that are not shared with any other drug. Sergeant Krabill then performed a "field operations test" and determined that the powder was Fentanyl. After searching the vehicle, the officers conducted a search of appellant that revealed $1,380 cash consisting of small-denomination bills and three cell phones.

{¶ 10} During his testimony, Sergeant Krabill identified exhibits consisting of the box found under the car, the lab tests confirming that the substances discovered were

crack cocaine and Fentanyl, and the substances themselves contained in small plastic bags. All exhibits were admitted into evidence, without objection. Sergeant Krabill testified that the presence of drugs divided into small plastic bags, coupled with the large amount of money in appellant's possession, indicated that he was involved in a drug trafficking operation.

{¶ 11} On cross examination, Sergeant Krabill confirmed that when he initiated the traffic stop, he did not know specifically where appellant was traveling from or the length of time that he had been traveling. He also confirmed that he did not see appellant place the magnetic box under the vehicle or attempt to retrieve anything from under the vehicle. He conceded that it was possible that the magnetic box had been left under the vehicle by a previous renter and that items placed underneath a vehicle could go unnoticed by its driver. As to the magnetic box, Sergeant Krabill testified that he did not know who placed the box under the vehicle, when it had been placed under the vehicle, or how long appellant had been operating the vehicle with the box underneath it. Sergeant Krabill did not contact the rental car company to determine who had rented the vehicle previously. He also testified that the bags containing the drugs were not tested for fingerprints or DNA evidence to determine who might have handled them. He also noted that the cell phones were not confiscated and were never tested to determine if they were operable. His cross-examination testimony concluded with his agreement that it is not illegal to have a large amount of money in small denominations.

6.

**Testimony of Detective Robert Bascone**

{¶ 12} At the time of trial, Detective Robert Bascone had been employed by the Toledo Police Department for 10 years. In that time, he had served on the Department's gang task force, the special intelligence group, and had received training on gang activity, drug trafficking, and surveillance. On the date of the underlying incident, Detective Bascone was assigned to the special intelligence group. His duties included performing surveillance on "primary offenders." He also identified several "factors" that he looks for when determining if an individual is involved in drug trafficking. These include "bulk amounts of the substance, the way they're packaged, currency that one might have on their person, and multiple cell phones[.]"

{¶ 13} On March 9, 2023, Detective Bascone was part of a joint operation with the Ohio State Highway Patrol in which they, along with the Toledo Police Department, assign detectives to patrol specific, high crime areas of the city to perform crime suppression activities and "looking for narcotics or guns." He was assigned to a vehicle with Sergeant Krabill. During their patrol, he and Sergeant Krabill observed appellant's vehicle and the illegally tinted windshield. Sergeant Krabill initiated a traffic stop based on the tint violation.

{¶ 14} Detective Bascone's involvement in the traffic stop was minimal. He testified that he counted the money found during a search of appellant and that the cash consisted of small denomination bills. He testified that the bills were not organized in any fashion and were "jumbled together." He also described Sergeant Krabill's

7.

discovery of the magnetic box, stating that the amount of drugs discovered inside the box was not typical for personal use and indicated drug trafficking. He further suspected drug trafficking because of the manner in which the drugs were divided and packaged into smaller bags. He noted that the use of rental vehicles in drug trafficking was common.

{¶ 15} On cross-examination, Detective Bascone acknowledged that he was unaware of who had rented the vehicle appellant was driving or how long appellant had been driving the vehicle. He also conceded that it was possible that the magnetic box had been left under the vehicle by a prior renter and that appellant could have been traveling without knowledge of its presence. He also described the use of multiple cell phones in drug trafficking, stating that drug traffickers typically have a phone for personal use and a phone used to arrange drug transactions. In past investigations, Detective Bascone had sought and received search warrants to open cell phones found during drug trafficking investigations to look for incriminating messages. He was unaware if any of the phones found in the vehicle appellant was driving were operational or if the contents of the phones were searched for additional evidence of drug trafficking.

## Appellant's Crim.R. 29 motion, closing arguments, and verdict

{¶ 16} The state rested its case at the conclusion of Detective Bascone's testimony. Appellant then made a motion for acquittal, pursuant to Crim.R. 29, arguing that the state failed to present sufficient evidence that he knowingly traveled with the magnetic box attached to his vehicle. The trial court denied appellant's motion.

8.

{¶ 17} The parties returned for the resolution of the trial the following day. After confirming that appellant would exercise his Fifth Amendment right not to testify, appellant rested his case. The trial court then denied appellant's renewed Crim.R. 29 motion and the parties proceeded with closing arguments. The matter was then submitted to the jury for deliberation. The jury returned a guilty verdict on all four counts later that same day.

### Sentencing

{¶ 18} Appellant was sentenced on July 2, 2024. The trial court determined that the possession of cocaine and possession of a Fentanyl-related compound offenses merged, respectively, with the associated trafficking offenses. The state elected to have appellant sentenced on the trafficking offenses. The trial court imposed a minimum prison term of 5 years and a maximum term of 7.5 years, pursuant to R.C. 2929.144, on the trafficking in a Fentanyl-related compound offense. The trial court imposed a prison term of 11 months on the trafficking in cocaine offense. The trial court ordered the sentences to be served concurrently. The trial court determined that appellant was indigent and granted his motion to waive any fines associated with his convictions. The trial court then ordered appellant to forfeit the $1,380 in cash that was collected as evidence to the City of Toledo. The trial court memorialized appellant's sentence in its July 3, 2024 judgment entry.

9.

## B. Assignments of Error

{¶ 19} Appellant timely appealed and asserts the following errors for our review:

1. The convictions were not based on sufficient evidence and the trial court violated appellant's right to Due Process pursuant to Article 1, Section 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the U.S. Constitution.

2. The trial court erred in failing to give the required notifications at sentencing for a non-life indefinite felony sentence.

3. The trial court erred in ordering forfeiture of $1,380 because the indictment contained no forfeiture specification and the trial court held no hearing.

## II. Law and Analysis

## A. The state presented sufficient evidence to support appellant's convictions.

{¶ 20} In his first assignment of error, appellant argues that the state failed to present sufficient evidence to support his drug trafficking convictions.[3] Specifically, appellant argues that the state failed to show that he had "constructive possession" of the magnetic box containing drugs prepared for distribution and, therefore, had not shown that he knowingly engaged in conduct that constituted the trafficking offenses.

{¶ 21} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational

---

[3] Appellant and the state both present arguments regarding the validity of the guilty verdict on the possession offenses. However, those offenses were merged with the trafficking offenses at sentencing and the state elected to have appellant sentenced on the trafficking offenses. Because the trial court did not impose a sentence on the possession offenses, he was not convicted of those offenses and this court lacks jurisdiction to review those verdicts. *See State v. Whitfield*, 2010-Ohio-2, ¶ 12; *State v. Worley*, 2016-Ohio-2722, ¶ 23 (8th Dist.).

10.

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113, (1997). In making that determination, we do not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 2008-Ohio-2762, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 22} Each of appellant's trafficking convictions were the result of his violation of R.C. 2925.03(A)(2), which states:

> (A)     No person shall knowingly do any of the following:
>
> (2)     Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance analog is intended for sale or resale by the offender or another person.

It is undisputed that the state presented evidence that the drugs found in the magnetic box had been prepared for distribution and were being transported by the vehicle appellant was driving. Appellant's sole argument is that the stated failed to show that he was knowingly transporting the drugs.

{¶ 23} Appellant's argument is premised on the state's alleged failure to show that he had "constructive possession" of the magnetic box while he was driving. Appellant's argument, however, misstates the elements of the drug trafficking offenses on which he was convicted. The plain language of R.C. 2925.03(A)(2) does not require that an offender be in "possession" of the controlled substance at the time they are arrested for trafficking in order to be convicted. *See State v. Pimental,* 2005-Ohio-384, ¶ 28 (8th

11.

Dist.) ("possession of a controlled substance is not a necessary element of drug trafficking."). To require the state to show that the offender had possession of the controlled substance would create an absurd result that would allow a drug trafficker to prepare controlled substances for delivery, arrange for their transport, and facilitate their sale, but avoid criminal liability because they were not found in possession of those substances. Therefore, the state was not obligated to present sufficient evidence that appellant had possession—actual or constructive—of the magnetic box, but only whether he knowingly transported the box.

{¶ 24} R.C. 2901.22(B) defines when an offender acts knowingly, stating:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will * * * probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.

"Relevant circumstantial evidence may be used to infer criminal intent. *State v. Duke,* 2021-Ohio-1552, ¶ 37 (6th Dist.), citing *State v. Baker,* 2010-Ohio-4719, ¶ 24 (6th Dist.). "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *Id.* Appellant denied any knowledge that the magnetic box was attached to the underside of the vehicle. As a result, we review the record to determine whether the state introduced sufficient evidence to show that appellant acted knowingly in

12.

transporting the magnetic box, containing controlled substances intended for sale or resale, from the surrounding circumstances.[4]

{¶ 25} At trial, Sergeant Krabill testified, based on his training and experience, that drug traffickers often use rented vehicles and illegal window tint to conceal their identities. He also noted that drug traffickers often carry cash consisting of small denomination bills and multiple cell phones. Detective Bascone also testified that an individual carrying certain types of currency and multiple cell phones are indicative of drug trafficking. Sergeant Krabill testified that he initiated a traffic stop of the rental vehicle due to the illegal tinting on the windshield. During the stop, appellant initially claimed that the vehicle belonged to "his girl," a claim Sergeant Krabill already knew was false as it was registered as a rental vehicle. Sergeant Krabill then discovered that appellant was carrying $1,300 in cash, consisting of $20 bills, and had three cell phones. Both Sergeant Krabill and Detective Bascone confirmed that each of these facts were "indicators" that appellant was trafficking drugs. Construing this evidence in a light most favorable to the state, we find that a rational trier of fact could have found that appellant was knowingly transporting the magnetic box containing drugs intended for sale under the vehicle. *See Smith*, 80 Ohio St.3d at 113 (1997). As a result, we find that the state

---

[4] We note the similarities between the "knowing" standard described here and "constructive possession" in that both can be shown based on relevant factual circumstances. While a finding that appellant acted knowingly in this case might likely also show that he exercised constructive possession of the magnetic box, the clarification between the two is necessary to avoid adding the additional "possession" element to trafficking offenses.

13.

presented sufficient evidence that appellant committed each of the drug trafficking offenses on which he was convicted.

{¶ 26} Appellant seeks to avoid this result, arguing that each of the factors considered—the rental vehicle, tinted windows, cash—constituted "mundane and banal" conduct that did not indicate criminal activity. Appellant further argued that none of the individual factors are illegal on their own and do not indicate criminal conduct.[5] Notably, however, appellant does not challenge Krabill and Bascone's testimony that the factors he exhibited indicate drug trafficking, only that he could provide an innocent explanation for those indicators. These arguments go to the weight of the evidence rather than the sufficiency of the evidence. *See State v. Liggins,* 2018-Ohio-243, ¶ 14 (6th Dist.), citing *State v. Wynder,* 2003-Ohio-5978, ¶ 32 (11th Dist.) ("A manifest weight of the evidence challenge contests the believability of the evidence presented."). Because we construe the evidence presented at trial in a light most favorable to the state to determine sufficiency, appellant's arguments that the factors indicating his knowledge of the magnetic box could have had innocent explanations do not impact our analysis. Our review determines whether the state presented sufficient evidence, not whether it presented the strongest evidence or whether that evidence could be refuted. *Smith* at 113.

{¶ 27} For these reasons, we find that the state presented sufficient evidence to show that appellant acted knowingly while transporting the magnetic box containing

---

[5] Appellant described tinted windows as being legal generally, but did not reference the illegality of tinting a windshield beyond the six-inch strip at the top as was present here and served as the basis for the initial traffic stop.

controlled substances intended for sale or resale. As a result, we find appellant's first assignment of error not well-taken.

**B. The trial court erred when it failed to provide each of the required notifications described in R.C. 2929.19(B)(2)(c).**

{¶ 28} In his second assignment of error, appellant argues that the trial court erred when it failed to provide each of the five required notifications described in R.C. 2929.19(B)(2)(c) at sentencing. We agree.

{¶ 29} Appellant was sentenced to a non-life indefinite prison term on his conviction for trafficking in a Fentanyl-related compound. Under R.C. 2929.19(B)(2)(c), if the sentencing court imposes a non-life indefinite prison term, it must notify the offender of each of the following:

(i)    That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii)   That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii)  That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

15.

(iv)    That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v)    That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

At sentencing, the trial court stated:

> Defendant is advised of the following [pursuant to R.C. 2929.19(B)(2)(c),] because I gave you a minimum of five, a maximum of seven-and-a-half, under this law, there's a rebuttable presumption that you are released at that five years. If, while you're at the institution, you commit any new offenses or get in trouble, the institution, and not this court, can make that go up. They would have hearings, they would base it on your security status, what you were sent to the penitentiary for, what you did to get into trouble, and they could have hearings and they could add time to that five years. They can't keep you past that seven-and-a-half. But you're still presumed to get out at that five years.

Appellant argues that this notification is "insufficient, as it does not contain all of the required information." The state argues that the trial court's notifications contain the first four required notifications but notes that the trial court failed to inform appellant that the Ohio Department of Corrections could maintain his incarceration more than one time as described in R.C. 2929.19(B)(2)(c)(iv). We concur with the state's analysis and find that the trial court failed to give all of the required notifications at sentencing.

{¶ 30} A trial court errs when it fails to provide each of the five required notifications at sentencing. *State v. Fenderson,* 2023-Ohio-2903, ¶ 77 (6th Dist.). Therefore, the trial court erred when it failed to provide appellant with all of the required

16.

notifications and we find his second assignment of error well-taken. We remand this matter to the trial court for the limited purpose of permitting it to provide these mandatory notifications. *Id.*

### C. The trial court erred in ordering the forfeiture of appellant's property when the indictment did not include a forfeiture specification.

{¶ 31} In his third assignment of error, appellant argues that the trial court erred when it ordered the forfeiture of the $1,300 in his possession at the time of his arrest to the state. Specifically, appellant argues that the trial court could not order the forfeiture here as the indictment lacked a forfeiture specification pursuant to R.C. 2981.02(A)(1)(c)(i). The state argues that the trial court could not order the forfeiture here because it was pursuing that forfeiture through a civil proceeding pursuant to R.C. 2981.05(A). Both parties, then, agree that the trial court lacked jurisdiction to order the forfeiture of property in the underlying proceedings. As a result, the only issue for this court to resolve is the impact of the trial court's order in its judgment entry.

{¶ 32} The state argues that the trial court's forfeiture order, despite having been made, is not subject to this court's review because it is not part of the record in the criminal proceedings below. The state is correct that our review is limited to the record before us and that we cannot consider the validity of any forfeiture order made in the civil case in this appeal. *See State v. Yeager,* 2024-Ohio-858, ¶ 72 (6th Dist.) (holding that in a direct appeal, the court of appeals cannot consider matters outside the record before it). It is illogical, however, for the state to argue that the trial court's order is not part of the record below when it asked for the forfeiture order at sentencing, despite knowing that

17.

the indictment lacked a forfeiture specification. Further, the state's argument ignores that the trial court expressly ordered the property to be forfeited to the state in its judgment entry in this case. Put simply, we find that the trial court's forfeiture order is part of the record before us and appellant's third assignment of error is subject to our review.

{¶ 33} Having reached that conclusion, we find appellant's third assignment of error well-taken because the trial court lacked jurisdiction over the state's civil forfeiture request in his criminal case. "Jurisdiction means the court's statutory or constitutional power to adjudicate the case." *State v. Holloway,* 2021-Ohio-1843, ¶ 9 (6th Dist.). "If a court acts without jurisdiction, then any proclamation by that court is void." *Id.* "To pursue forfeiture of an offender's property, [R.C.] Chapter 2981 creates both a criminal process under R.C. 2981.04 and a civil process under R.C. 2981.05." *Id.* at ¶ 17. If the state fails to initiate forfeiture proceedings, the trial court lacks jurisdiction over the property subject to forfeiture. *Id.,* citing *State v. Brimacombe,* 2011-Ohio-5032, ¶ 34 (6th Dist.). Here, the trial court ordered the forfeiture of appellant's property despite the lack of a forfeiture specification in the indictment. Therefore, the trial court lacked jurisdiction over the property subject to forfeiture and its order is void. *Holloway* at ¶ 17.

{¶ 34} For these reasons, we find appellant's third assignment of error well-taken and we reverse the trial court's judgment to the extent it orders the forfeiture of $1300 to the state. We note that our judgment is limited to this appeal and has no impact on the civil forfeiture proceedings the state previously initiated.

18.

### III. Conclusion

{¶ 35} We find appellant's first assignment of error not well-taken and we affirm his convictions. We find appellant's second and third assignments of error well-taken and we reverse, in part, the July 3, 2024 judgment of the Lucas County Court of Common Pleas consistent with this decision. We remand this matter to the trial court for the limited purpose of providing appellant each of the required notifications described in R.C. 2929.19(B)(2)(c).

{¶ 36} The parties are ordered to share the costs of this appeal pursuant to App.R.24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.          _____
                                                        JUDGE
Gene A. Zmuda, J.

                                             _____
Charles E. Sulek, P.J.                              JUDGE
CONCUR.

                                             _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.