**[Cite as *State v. Noel*, 2026-Ohio-1144.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    31255 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SERGIO NOEL | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR-2020-01-0223-A |

## DECISION AND JOURNAL ENTRY

Dated: March 31, 2026

STEVENSON, Judge.

{¶1}    Defendant-Appellant Sergio Noel appeals from the judgment of the Summit County Common Pleas Court finding him guilty of trafficking in heroin and an accompanying major drug offender specification. For the reasons set forth below, we affirm.

## I.

{¶2}    Mr. Noel was charged with one count of trafficking in heroin in violation of R.C. 2925.03(A)(2), 2925.03(C)(6)(g), a felony of the first degree, with a major drug offender specification pursuant to R.C. 2941.1410(A); one count of possession of heroin in violation of R.C. 2925.11(A), 2925.11(C)(6)(f), a felony of the first degree, with a major drug offender specification pursuant to R.C. 2941.1410(A); one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), 2923.13(B), a felony of the third degree; one count of trafficking in marihuana in violation of R.C. 2925.03(A)(2), 2929.03(C)(3)(c), a felony of the fourth degree; and one count of possession of marihuana in violation of R.C. 2925.11(A),

2925.11(C)(3)(c), a felony of the first degree. Mr. Noel pleaded not guilty to the charges, and the matter proceeded to a jury trial.

{¶3} On October 30, 2018, exterminator S.W. was performing regularly scheduled pest control maintenance at a North Hill apartment complex. S.W. testified that he was told to pay attention to the stove and refrigerator in Apartment 6 ("the apartment") as roaches had been reported in that area. He observed "a plate with bags" when he opened the oven. S.W. and his co-worker believed that "[s]ome type of drug" was in the bags in the oven. The exterminators exited the apartment and called the police.

{¶4} Akron Police Officer Patrick Mobley responded to the exterminator's call. Officer Mobley testified that the apartment complex is a secure building that requires a key to enter the complex. He testified that the exterminators met him at the exterior door to let him into the complex and that they led him to the apartment where they reported finding "drugs in an oven." He secured the apartment from outside the unit while he waited for detectives to arrive. He testified that he verified that the apartment was rented to Jerome Lusane.

{¶5} Officer Mobley testified that Mr. Noel entered the complex through the exterior door while he was waiting for the detectives. According to the officer, the exterior door was locked, and Mr. Noel must have had a key to enter the building. Officer Mobley testified that Mr. Noel represented that his friend lived in the apartment, and he asked to enter the unit. Mr. Noel left after Officer Mobley told him he could not enter the apartment. Officer Mobley's body worn camera video, showing Mr. Noel and his interaction with the officer, was shown at trial and admitted into evidence. Officer Mobley never entered the apartment, and he left when the detectives arrived.

{¶6}    Akron Police Detective Michael Schmidt was working as a narcotics detective on October 30, 2018. He testified that he took pictures of the interior and exterior of the premises. His photographs were introduced and admitted into evidence at trial.

{¶7}    Detective Schmidt observed digital scales, "little paper folds[,]" mannitol, a red sifter, multiple plastic bags including a box of new plastic bags, a larger plate with a "gray chunk substance in it" in the oven, and five rubber gloves inside the apartment. He testified that all these items are commonly used in drug trafficking. Detective Schmidt explained that "[d]igital scales are used to weigh different amounts of drugs[;]" "drugs are packaged in these little paper folds for distribution[;]" "rubber gloves are common" as "you're dealing with a deadly substance[;]" mannitol is "a cutting agent, which basically it's an additive that drug traffickers use to add to drugs to extend the product[;]" and, "a sifter[] [is] [a]nother common item we find during search warrants and drug trafficking locations." The "gray chunk substance" on the plate in the oven was later determined to be over 800 grams of heroin.

{¶8}    Detective Schmidt also observed and photographed a face mask and a receipt for three items that were purchased at a secondhand store on October 25, 2018. The items purchased at the secondhand store included a strainer, spoon, and plate.

{¶9}    Detective Schmidt testified that there were no household furnishings or anything in the kitchen or bathroom cabinets to suggest someone was living in the apartment. He testified that drug traffickers usually have a location other than their residence for drugs. Detective Schmidt explained:

> Normally, especially with dealing with large-scale traffickers, they will have a location. You live in one location, but you have a location that will be used to conduct business away from where you live because you're not going to keep it at the same place  you live in case the police come.

So you have a location that you use to just store your drugs, to distribute drugs, keep your drugs. Again, to kind of avoid detection by law enforcement.

He further explained that "the main person" in drug trafficking "[n]ormally . . . will not have apartments in their name. They will use other people . . . to avoid connection with them, where it can be brought back to them."

{¶10} Akron Police Detective Chris Carney also worked in the narcotics bureau and responded to the apartment on October 30, 2018. Detective Carney testified that the apartment appeared to be a "stash house." He explained that a "stash house is somewhere a drug dealer hides their drugs, money, and guns." According to Detective Carney, the apartment was "fairly clean" and "ha[d]n't been lived in."

{¶11} Like Detective Schmidt, Detective Carney testified that the secondhand store receipt that was found in the apartment was for the purchase of a strainer, spoon, and a plate. Detective Carney testified that he went to the secondhand store which was just "[a] large block" from the apartment and that he viewed and obtained the surveillance videos that were played at trial and admitted into evidence.

{¶12} Mr. Noel is seen in the surveillance videos arriving at the store with Jerome Lusane and purchasing a spoon, red sifter, and large plate. Detective Carney testified that the spoon, red sifter, and the large plate matched those that were found in the apartment. Jerome Lusane is seen in the videos purchasing two folding chairs, items that were also found in the apartment.

{¶13} Detective Carney testified that a spoon is used in drug trafficking "to take mannitol out to mix with heroin." He explained that "the whole idea behind [using mannitol] is [to] double or quadruple your product." A spoon is also used "to smash up the bricked[-]up heroin to make it into powder." He testified that a sifter is used to "weed out the big parts."

{¶14}   Detective Carney testified that the heroin that was found in the apartment was not for personal use. He testified:

> Q. [THE STATE]: So just to be clear, the amount of heroin that was recovered in the oven in this case, is there any way that would be considered for personal use?
>
> A. [DETECTIVE CARNEY]: Absolutely not.

{¶15}   Sara Horst is a forensic scientist in the forensic DNA unit at the Bureau of Criminal Investigation ("BCI"). The parties stipulated at trial that Ms. Horst is an expert in her field. The five rubber gloves and two firearms that were found in the apartment were sent to BCI for DNA testing.

{¶16}   Ms. Horst testified that DNA testing involves a four-step process: extraction, quantification, amplification, and interpretation. She explained that, in extraction, "we are separating the DNA from all the other material that it was collected on[;]" quantification "is where we see how much human DNA we have in that sample[;]" amplification is "where we make millions of copies of the regions of the DNA that we use to make a comparison[;]" and interpretation "is where we look at the profile from the evidence, and determine if it is suitable for comparison." If a DNA profile is suitable for comparison, Ms. Horst explained that "we then make a comparison by comparing it to any known standards that we have in that case."

{¶17}   Ms. Horst testified that she performed the DNA analysis on the gloves and that she prepared a report of her findings. Her report was admitted into evidence at trial. Ms. Horst testified that the DNA profile obtained from the interior of three of the gloves and the exterior of two of the gloves was a mixture with a major profile that was consistent with the known standard obtained from Mr. Noel, with a "rarer than 1 and 1 trillion" finding. She testified that the swab from the exterior of one glove was not a mixture and that DNA profile on that glove was consistent with the known standard obtained from Mr. Noel, also with a "rarer than 1 in 1 trillion" finding. She

testified that there was no finding of DNA of Mr. Noel on either firearm and that the DNA found on the mask "was found to be inconsistent with that of Sergio Noel, so he is excluded from the interpretable data."

{¶18}   Mr. Noel did not testify at trial and did not call any witnesses to testify on his behalf.

{¶19}   A jury found Mr. Noel guilty of trafficking in heroin and the accompanying major drug offender specification. He was found not guilty of having weapons under disability, trafficking in marihuana, and possession of marihuana. The jury was deadlocked on the possession of heroin charge, and the State later dismissed this charge. The trial court sentenced Mr. Noel to 11 years of incarceration and denied his motion for new trial. Mr. Noel appeals asserting seven assignments of error for this Court's review.

II.

**FIRST ASSIGNMENT OF ERROR:**

**THE TRIAL COURT ERRED IN PERMITTING INTRODUCTION OF DNA EVIDENCE TESTIMONY OF FORENSIC SCIENTIST, SARA HORST, IN VIOLATION OF THE UNITED STATES SUPREME COURT RULING IN [SMITH V.] ARIZONA [], AND THE CONFRONTATION CLAUSE OF THE U.S. CONSTITUTION.**

{¶20}   Mr. Noel argues in his first assignment of error that the statements of Sara Horst at trial "were inadmissible hearsay" and the trial court permitted her testimony in violation of *Smith v. Arizona*, 602 U.S. 779 (2024) and the Confrontation Clause of the U.S. Constitution. Mr. Noel, however, did not object to Ms. Horst's testimony at trial. Defense counsel "stipulate[d] she is an expert in her field" and cross-examined her at trial. Mr. Noel has thus forfeited all arguments but plain error on this issue. *See* Crim.R. 52(B); *State v. Knight*, 2016-Ohio-8505, ¶ 12 (9th Dist.). Mr. Noel has not argued plain error on appeal, and this Court will not develop a plain error argument on his behalf. *State v. Samamra*, 2025-Ohio-126, ¶ 55 (9th Dist.). Although Mr. Noel

has attempted to raise plain error in his reply brief, "'an appellant may not assert a claim of plain error for the first time in a reply brief.'" *State v. Andrews*, 2020-Ohio-2703, ¶ 51 (9th Dist.), quoting *State v. Irvine*, 2019-Ohio-959, fn. 1 (9th Dist.).

{¶21} Even if Mr. Noel had presented a plain error argument on appeal, there is no showing on the record of "an error, *i.e.*, a deviation from the legal rule" during the trial testimony of Ms. Horst. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Mr. Noel relies on *Smith*, 602 U.S. 779, and *State v. Hale*, 2024-Ohio-5579 (1st Dist.) to support his argument that Ms. Horst's trial testimony "implicated [his] right to confrontation." There was no dispute in *Smith* that the state's testifying expert did not perform any of the drug testing and that, rather, he was relying on someone else's "report and notes" to "provide an independent opinion on the drug testing performed" by the non-testifying analyst. *Id.* at 780, 791. Similarly, it was clear in *Hale* that the testifying BCI experts had relied on "the notes and data they received" from other analysts and, "[o]n the [witness] stand, both . . . were candid about the fact that they were involved only in the final-stop analysis, not the hands-on laboratory testing." *Hale*, 2024-Ohio-5579, ¶ 43, 44 (1st Dist.). Mr. Noel contends that, like the experts in *Smith* and *Hale*, "[Ms.] Horst only did the [DNA] analysis" and "did not handle swabbing, extraction, or data production." The record does not support this contention.

{¶22} Ms. Horst testified at trial about her role at BCI and she explained the "four-step process" that "we" complete when testing for DNA. She testified that she takes "the data from all of those processes" that "we" conduct and that she:

> determine[s] if the profiles from the evidence is interpretable. I make that interpretation, and then I compare that DNA from the evidence to any known profiles that we have in that case.

{¶23} Ms. Horst was questioned at trial about her involvement in the DNA analysis of the rubber gloves that were submitted to BCI in this case:

Q. [THE STATE]: . . . did you perform any DNA analysis of [the rubber gloves]?

A. [MS. HORST]: Yes. . . .

She also testified that "I received two firearms . . . , as well as a mask" in this case and that she conducted the DNA testing on these items. Ms. Horst testified she generated her report close in time to her DNA analysis. Defense counsel stipulated to the admission of Ms. Horst's report at trial. Defense counsel asked Ms. Horst about her swabs, testing, and DNA analysis of the gloves and firearms on cross-examination.

{¶24} Unlike in *Smith* and *Hale*, the record does not support that Ms. Horst relied on the report, notes, or data of others when performing a DNA analysis. Accordingly, there is no showing on the record of "an error, *i.e.*, a deviation from the legal rule" during the trial testimony of Ms. Horst. *Barnes*, 94 Ohio St.3d at 27.

{¶25} For the reasons set forth above, Mr. Noel's first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR:

**THE TRIAL COURT ERRED IN SENTENCING [MR.] NOEL VIA ZOOM, WITHOUT ADEQUATE CRIM.R. 43 WAIVER AND IN VIOLATION OF THE DUE PROCESS PROTECTIONS OF THE U.S. CONSTITUTION.**

{¶26} Mr. Noel argues in his second assignment of error that the trial court erred in sentencing him via Zoom without a Crim.R. 43 waiver and in violation of the due process protections of the U.S. Constitution. We disagree.

{¶27} Section 10, Article I of the Ohio Constitution mandates that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel[.]" Sentencing is a stage of a criminal trial that requires a defendant's presence. Crim.R.

43(A)(1) provides, in part, that "the defendant must be physically present at every stage of the criminal proceeding and trial, including the . . . the imposition of sentence . . . ." However, "[a] court may conduct . . . a sentencing proceeding . . . with a defendant appearing remotely if the defendant has waived . . . orally on the record the right to be physically present and agreed to appear by remote presence . . . ." Crim.R. 43(A)(3).

{¶28} A review of the record establishes that a hearing to address a juror security concern was held after the jury had returned its verdict but before sentencing. Defense counsel suggested at this hearing that, "[u]nder the circumstances . . . we do the sentencing by Zoom[.]" The trial court stated that was "a really good idea" and it scheduled a Zoom sentencing hearing.

{¶29} Mr. Noel appeared by Zoom for sentencing. He informed the trial court at the beginning of the hearing that he "was told that I was going to be brought in" and that "I was told I would be able to speak to my attorneys before." The court went off the record while Mr. Noel spoke with his attorneys.

{¶30} The trial court asked Mr. Noel when it went back on the record:

[THE COURT]: Mr. Noel, . . . do you agree to be seen by video this morning?

[MR. NOEL]: Yes, ma'am.

Mr. Noel waived on the record his Crim.R. 43 right to be physically present in court and the matter proceeded to sentencing.

{¶31} Upon review of the record, we conclude that Mr. Noel was remotely present for the imposition of his sentence at the sentencing hearing held via Zoom and that he waived his Crim.R. 43 right to be physically present in court for the hearing. Mr. Noel's second assignment of error is overruled.

**THIRD ASSIGNMENT OF ERROR:**

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING [MR. NOEL'S] MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29.**

**{¶32}** Mr. Noel argues in his third assignment of error that the trial court abused its discretion when it denied his Crim.R. 29 motion for judgment of acquittal. We disagree.

**{¶33}** "There is no difference between the standard of review for a challenge to the sufficiency of the evidence and that for a motion for acquittal under Crim.R. 29." *State v. Rivera*, 2023-Ohio-1788, ¶ 37 (9th Dist.). The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio S.3d 380, 386 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution met its burden of production. *Rivera* at ¶ 37. The Ohio Supreme Court explained this Court's role as follows:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶34}** Mr. Noel does not dispute that heroin was found in the apartment. He does not dispute the amount of the heroin, that his DNA was found on the gloves, and that he purchased the spoon, strainer, and plate that was found in the apartment. He argues that the trial court should have granted his Crim.R. 29 motion because the State failed to establish actual or constructive possession. He further argues that, even if possession was proven, his Crim.R. 29 motion should have been granted because "there was simply no evidence that he prepared for sale, shipped,

distributed, or sold heroin." Regarding the amount of heroin that was found, Mr. Noel argues "the fact that the heroin found was an amount too large for personal consumption is not enough to support a finding of guilt as to trafficking."

{¶35} The State argues that it was not required to prove possession to establish trafficking and that, regardless, it established constructive possession at trial.

{¶36} Mr. Noel challenges his conviction for trafficking in heroin in violation of R.C. 2925.03(A)(2), 2925.03(C)(6)(g). R.C. 2925.03, as in effect when Mr. Noel was charged, provides:

(A)     No person shall knowingly . . . :

        . . .

(2)     Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

        . . .

(C) Whoever violates division (A) of this section is guilty of one of the following:

        . . .

(6)     If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows:

        . . .

(g) If the amount of the drug involved equals or exceeds one thousand unit doses or equals or exceeds one hundred grams . . . trafficking in heroin is a felony of the first degree . . . and the court shall impose as a mandatory prison term the maximum term prescribed for a felony of the first degree.

There is no dispute that heroin is a controlled substance and that over 800 grams of heroin were discovered in the apartment. *See* R.C. 3719.01(C), Schedule I(B)(11).

{¶37} To be found guilty of drug trafficking under R.C. 2925.03(A)(2), the State must prove that the defendant knowingly sold or offered to sell a controlled substance. R.C. 2925.03(A)(2) does not require that an offender be in possession of the controlled substance to be convicted under the statute. *State v. Cabrales*, 2008-Ohio-1625, ¶ 29, abrogated on other grounds by *State v. Johnson*, 2010-Ohio-6314 ("Trafficking under R.C. 2925.03(A)(1) requires an intent to sell, but the offender need not possess the controlled substance in order to offer to sell it."); *State v. Stuart*, 2025-Ohio-2420, ¶ 23 (6th Dist.) ("The plain language of R.C. 2925.03(A)(2) does not require that an offender be in 'possession' of the controlled substance at the time they are arrested for trafficking in order to be convicted."), citing *State v. Pimental*, 2005-Ohio-384, ¶ 28 (8th Dist.) ("possession of a controlled substance is not a necessary element of drug trafficking."). The court explained in *Stuart* at ¶ 23:

> To require the state to show that the offender had possession of the controlled substance would create an absurd result that would allow a drug trafficker to prepare controlled substances for delivery, arrange for their transport, and facilitate their sale, but avoid criminal liability because they were not found in possession of those substances.

{¶38} Accordingly, the State did not have to establish that Mr. Noel had possession of the heroin, but only that he "knowingly . . . [p]repare[d] for shipment, ship[ped], transport[ed], deliver[ed], prepare[d] for distribution, or distribute[d] a controlled substance" when he knew or had "reasonable cause to believe that the controlled substance . . . [was] intended for sale or resale . . . ." R.C. 2925.03(A)(2). R.C. 2901.22(B) defines knowingly as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will . . . probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.

{¶39} "'Circumstantial evidence has long been used to successfully support drug trafficking convictions.'" *State v. Delaney*, 2018-Ohio-727, ¶ 11 (9th Dist.), quoting *State v.*

*Washington*, 2014-Ohio-1008, ¶ 36 (6th Dist.). Circumstantial evidence "possess[es] the same probative value" as direct evidence and is therefore "subjected to the same standard of proof." *Jenks*, 61 Ohio St.3d 259 at paragraph one of the syllabus. If the State relies on circumstantial evidence to prove an essential element of an offense, "there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Id.*; *State v. McCoy*, 2011-Ohio-6592, ¶ 7 (9th Dist.).

{¶40} Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence to support the jury's trafficking in heroin verdict. Detective Schmidt and Detective Carney both testified that no one appeared to be living in the apartment. Detective Schmidt explained that drug traffickers usually have a location other than their residence for drugs and Detective Carney similarly testified that the apartment appeared to be "a stash house."

{¶41} The detectives testified that items found in the apartment, including digital scales, paper folds, mannitol, sifter, plastic bags, a spoon, and firearms are all items associated with drug trafficking. The detectives testified that a secondhand store receipt for the purchase of the spoon, sifter, and large plate, was found in the apartment. Mr. Noel is seen in the secondhand store surveillance video purchasing the spoon, sifter, and plate. The detectives testified that rubber gloves are also associated with drug trafficking and Ms. Horst testified that Mr. Noel's DNA was found on the gloves.

{¶42} Officer Mobley testified that the apartment complex is secure and that a key is needed to enter the building. He testified that Mr. Noel entered the secured complex while the officer was there and that Mr. Noel asked to enter the apartment.

{¶43} The evidence was sufficient to support the finding that Mr. Noel was trafficking in heroin. A large quantity of heroin was found inside the apartment and Detective Carney testified

that the amount of heroin was beyond the scope of what could be considered for personal use. The detectives found numerous items associated with drug trafficking and Mr. Noel's DNA was on the rubber gloves found in the apartment. Mr. Noel was seen on videotape purchasing tools to prepare and process the drugs. Accordingly, we cannot say the trial court erred when it denied Mr. Noel's Crim.R. 29 motion for judgment of acquittal. Mr. Noel's third assignment of error is overruled.

## FOURTH ASSIGNMENT OF ERROR:

**FATALLY INCONSISTENT JURY VERDICTS REQUIRE REVERSAL WHERE A FINDING OF NOT GUILTY ON POSSESSION NECESSARILY REQUIRES A NOT GUILTY FINDING ON A TRAFFICKING OFFENSE.**

{¶44}  Mr. Noel argues in his fourth assignment of error that the jury verdict of not guilty on possession and guilty of trafficking are inconsistent and require a reversal in this case.  We disagree.

{¶45}  The Ohio Supreme Court has held that "[t]he several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Lovejoy*, 79 Ohio St.3d 440 (1997), paragraph one of the syllabus; *State v. Omenai*, 2024-Ohio-1571, ¶ 9 (9th Dist.). "'Consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others; the conviction generally will be upheld irrespective of its rational incompatibility with the acquittal.'" *State v. Inman*, 2014-Ohio-3538, ¶ 16 (9th Dist.), quoting *State v. Smith*, 2014-Ohio-709, ¶ 23 (10th Dist.), quoting *State v. Trewartha*, 2005-Ohio-5697, ¶ 15 (10th Dist.).

{¶46}  The jury in this case was unable to reach a verdict on count two, the possession of heroin charge, and the State later dismissed this charge. Mr. Noel argues on appeal that "the jury's

inability to reach a unanimous decision as to whether [he] possess[ed] heroin demonstrates that they could not have lawfully found [him] guilty of trafficking as possession is a requisite element of trafficking." He contends that "the jury's guilty finding of count 1 [trafficking in heroin] is fatally inconsistent requiring reversal as it evidences that the jury did not find that the state proved each element of count 1 beyond a reasonable doubt."

**{¶47}** The State argues that Mr. Noel's fourth assignment of error is based on a false premise. It points out that the jury did not issue a verdict on count two, the possession of heroin charge and that there is only one verdict regarding heroin. The State further argues that there is no basis to reverse the trafficking conviction even if Mr. Noel's argument is not based on a false premise.

**{¶48}** We first note that the jury did not reach a verdict on the charge of possession of heroin in violation of R.C. 2925.11(A)/(C)(6)(f) and the State subsequently dismissed this count. Thus, there were no inconsistent jury verdicts in this case. Further, as set forth under our analysis of Mr. Noel's third assignment of error, the State did not have to prove that Mr. Noel had possession of heroin to prove trafficking in violation of R.C. 2925.03(A)(2). *Cabrales*, 2008-Ohio-1625, at ¶ 29, abrogated on other grounds by *Johnson*, 2010-Ohio-6314; *Stuart*, 2025-Ohio-2420, at ¶ 23 (6th Dist.), citing *Pimental*, 2005-Ohio-384, at ¶ 28 (8th Dist.). Mr. Noel's argument that possession of heroin and trafficking in heroin jury verdicts are inconsistent and require a reversal is without merit.

**{¶49}** For the reasons set forth above, Mr. Noel's fourth assignment of error is overruled.

## FIFTH ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN FAILING TO GRANT [MR.] NOEL A NEW TRIAL ON THE BASIS THAT A JUROR MADE IMPROPER COMMENT REGARDING EVIDENCING REJECTION OF THE COURT'S INSTRUCTION OF LAW.**

{¶50} Mr. Noel argues in his fifth assignment of error that the trial court erred in failing to grant him a new trial. He argues that a juror made an improper comment about him not testifying in his own defense and that he is entitled to a new trial pursuant to Crim.R. 33(A). We disagree.

{¶51} A defendant may move for a new trial when his substantial rights have been materially affected by juror misconduct. *See* Crim.R. 33(A)(2). "This Court has consistently held that an appellate court reviews a trial court's ruling on a motion for new trial under an abuse of discretion standard." *State v. Kilgore*, 2025-Ohio-593, ¶ 7 (9th Dist.). The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "'When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court.'" *Kilgore* at ¶ 7, quoting *State v. Roper*, 2021-Ohio-188, ¶ 8 (9th Dist.), citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1983).

{¶52} Mr. Noel argues that, after the verdicts were rendered, "the foreperson made a statement indicating that he could not disregard the fact that [he] did not testify in his own defense." He contends that this statement "supports a showing that the jury ignored [his] constitutional protection against self-incrimination, and the right to remain silent" and that the trial court erred when it denied his motion for new trial. The State argues Mr. Noel failed to establish juror misconduct and resulting prejudice and that, therefore, the trial court did not abuse its discretion when it denied the motion for new trial.

{¶53} "When a defendant moves for a new trial on the basis of juror misconduct, a trial court must conduct a two-part inquiry." *State v. Mosley*, 2020-Ohio-5047, ¶ 41 (9th Dist.). This Court explained in *Mosley*:

> The first determination is whether misconduct actually occurred, and the second is whether that misconduct materially prejudiced the defendant's substantial rights. Claims of juror misconduct must be sustained by affidavit showing their truth . . . . Additionally, the evidence of the alleged misconduct must come from a source, other than one of the jurors, who possesses firsthand knowledge of the misconduct. Juror testimony is generally not admissible to impeach a jury verdict unless there is supporting evidence aliunde. The purpose of the aliunde rule is to maintain the sanctity of the jury room and the deliberations therein.

(Quotations and citations omitted.) *Id.*

{¶54} The defendant in *Mosley* argued that he was entitled to a new trial due to juror misconduct. *Id.* at ¶ 42. He alleged that when his attorneys were speaking to the jurors after trial, "[o]ne juror had said he felt Mosley was guilty because he did not testify in his own defense" and "[o]thers said they felt sympathy for a State's witness due to defense counsel's cross-examination." *Id.* The *Mosley* defendant argued that "[the jurors'] admissions evidenced their failure to follow the court's instructions and decide the matter based strictly on the evidence presented at trial." *Id.* The trial court disagreed and denied Mr. Mosley's motion for new trial. *Id.* at ¶ 39.

{¶55} This Court concluded in *Mosley* that the defendant "failed to demonstrate that any juror misconduct occurred." *Id.* at ¶ 43. We noted that the only evidence the defendant had presented in support of his motion for new trial "came directly from his attorneys' discussion with the jurors" and that he had "failed to set forth any 'extraneous, independent evidence of alleged conduct based on the firsthand knowledge of one who is not a juror.'" *Id.*, quoting *State v. Scheck*, 2006-Ohio-647, ¶ 25 (9th Dist.). We concluded that without extraneous, independent evidence, "[the defendant's] attorneys were 'incompetent to testify to the [jurors'] [] statements[]'" and we affirmed the judgment of the trial court. *Mosley* at ¶ 43, quoting *Scheck* at ¶ 26; Evid.R. 606(B).

{¶56} Mr. Noel's attorney stated in his affidavit that "[f]ollowing the jury's verdict, I spoke to members of the jury" and that "[d]uring my conversation with the jury foreperson, the Foreman told me 'I just can't get over the fact that he didn't testify.'" Trial counsel noted the

juror's comment at sentencing and testified at the hearing on Mr. Noel's motion for new trial that "[t]he jury foreperson made a statement of saying I just can't get over the defendant didn't testify." As in *Mosley*, the only evidence Mr. Noel presented in support of his motion for new trial was an affidavit and testimony from his attorney and his attorney's testimony is solely based on his discussion with the juror. Mr. Noel did not present "any 'extraneous, independent evidence of alleged conduct based on the firsthand knowledge of one who is not a juror.'" *Mosley* at ¶ 43, quoting *Scheck* at ¶ 25. As we stated in *Mosley*, without any extraneous, independent evidence, Mr. Noel's trial counsel was incompetent to testify to the juror's statement. *Id.*

**{¶57}** Mr. Noel failed to set forth any admissible evidence in support of his juror misconduct claim. Accordingly, we cannot say that the trial court abused its discretion when it denied his motion for new trial. Mr. Noel's fifth assignment of error is overruled.

**SIXTH ASSIGNMENT OF ERROR:**

**[MR. NOEL'S] CONVICTION[] [IS] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶58}** Mr. Noel argues in his sixth assignment of error that his trafficking conviction is against the manifest weight of the evidence. We disagree.

**{¶59}** When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). A reversal on a manifest weight of the evidence challenge is reserved for exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶60} Mr. Noel acknowledges the testimony at trial that he had worn the rubber gloves and had purchased the sifter, spoon, and platter that were found in the apartment. He further acknowledges the detectives' testimony that items found in the apartment are commonly used in drug trafficking. Mr. Noel argues that this testimony and evidence, however, is "no[t] direct evidence of trafficking" and "is insufficient to support a conviction[.]" The State contends that "[t]he record contains ample evidence to prove [Mr.] Noel was guilty of trafficking in heroin."

{¶61} Having reviewed the record, we cannot conclude that this is an exceptional case where the jury lost its way by convicting Mr. Noel. *See Otten* at 340. As detailed above in the third assignment of error, substantial evidence was presented that Mr. Noel was engaged in trafficking heroin. There is no dispute that over 800 grams of heroin was found in the apartment and that Mr. Noel purchased the platter that the heroin was on in the oven. There is also no dispute that Mr. Noel purchased the spoon and sifter that was found in the apartment and that his DNA was on the rubber gloves. The detectives testified that the spoon, sifter, and other items found in the apartment including digital scales, paper folds, mannitol, plastic bags, and firearms are all items associated with drug trafficking. Officer Mobley testified that Mr. Noel entered the secured apartment complex while the officer was present and that Mr. Noel asked to enter this friend's apartment. Detective Carney testified that there was "[a]bsolutely" no way that the amount of heroin found in the apartment was for personal use. Both Detective Carney and Detective Schmidt testified that no one lived in the apartment and that drug traffickers generally have a location other than their residence for drugs, referred to as "a stash house." Mr. Noel presented no evidence in his case in chief to contradict this testimony. Upon reviewing the entire record, we cannot say that the jury, in resolving any conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice requiring a reversal of Mr. Noel's trafficking in heroin conviction. *See Otten*, 33 Ohio

App.3d at 340. This is not an exceptional case in which the evidence weighs heavily against the conviction. *See Thompkins*, 78 Ohio St.3d at 387. Mr. Noel's manifest weight of the evidence argument, as asserted in his sixth assignment of error, is overruled.

**SEVENTH ASSIGNMENT OF ERROR:**

**THE CUMULATIVE EFFECT OF MULTIPLE ERRORS DEPRIVED [MR. NOEL] OF HIS CONSTITUTIONALLY GUARANTEED RIGHT TO A FAIR TRIAL UNDER THE FEDERAL AND STATE CONSTITUTION.**

{¶62} Mr. Noel argues in his seventh assignment of error that the cumulative effect of multiple errors deprived him of his constitutional guaranteed right to a fair trial under the Federal and State constitution. We disagree.

{¶63} "Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of errors deprive a defendant of the constitutional right to a fair trial even though none of the errors, in isolation, was prejudicial." *State v. Boone*, 2013-Ohio-2664, ¶ 38 (9th Dist.), citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. In the absence of multiple errors, the cumulative error doctrine does not apply. *State v. Hunter*, 2011-Ohio-6524, ¶ 132; *State v. Jenkins*, 2018-Ohio-4814, ¶ 30 (9th Dist.). Likewise, if a defendant fails "'to demonstrate any prejudice resulting from the errors he has alleged, he cannot demonstrate cumulative error.'" *State v. Straughan*, 2021-Ohio-1054, ¶ 68 (9th Dist.), quoting *In re F.B.*, 2019-Ohio-1738, ¶ 47 (9th Dist.).

{¶64} Mr. Noel has not shown that multiple errors occurred during his trial or that he was prejudiced because of any errors that occurred. Accordingly, he has not established cumulative error. *See Hunter* at ¶ 132; *Straughan* at ¶ 68. His seventh assignment of error is overruled.

## III.

{¶65} Based on the foregoing, Mr. Noel's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

─────

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

KIMBERLY KENDALL CORRAL and GABRIELLE PLOPLIS, Attorneys at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and JAMIE L. MORRIS, Assistant Prosecuting Attorney, for Appellee.